# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT KNOXVILLE

### FEBRUARY SESSION, 1997

FILED

December 17, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

|  |  |  |
|---|---|---|
| STATE OF TENNESSEE, | ) | C.C.A. NO. 03C01-9605-CC-00183 |
|  | ) |  |
| Appellee, | ) |  |
|  | ) |  |
|  | ) | JEFFERSON COUNTY |
| VS. | ) |  |
|  | ) | HON. REX HENRY OGLE |
| LARRY GUNTER, | ) | JUDGE |
|  | ) |  |
| Appellant. | ) | (Direct Appeal - Aggravated Assault) |

## ON APPEAL FROM THE JUDGMENT OF THE
## CIRCUIT COURT OF JEFFERSON COUNTY

FOR THE APPELLANT:

EDWARD C. MILLER
Public Defender
P.O. Box 416
Dandridge, TN 37725

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General and Reporter

SANDY R. COPOUS
Assistant Attorney General
425 5th Avenue North
Nashville, TN 37243

AL SCHMUTZER, JR.
District Attorney General

JAMES L. GASS
Assistant District Attorney General
Sevier County Courthouse, Suite 301
Sevierville, TN 37862

OPINION FILED _____

AFFIRMED

JERRY L. SMITH, JUDGE

# OPINION

Appellant Larry Donald Gunter appeals from a jury verdict rendered on April 12, 1995 in the Jefferson County Circuit Court finding him guilty of aggravated assault. Appellant pleaded guilty to a charge of driving a motor vehicle without a valid operator's license. As a Range I standard offender, Appellant received the following sentences: (1) six years confinement in the Tennessee Department of Corrections for the aggravated assault; and (2) a concurrent sentence of thirty days in the Jefferson County Jail, on the conviction for driving a motor vehicle without a valid operator's license. On April 24, 1995, Appellant filed a motion for new trial. However, the trial court denied this motion on February 7, 1996. Appellant presents two issues for consideration on this direct appeal: (1) whether the evidence was sufficient as a matter of law to sustain Appellant's conviction for aggravated assault; and (2) whether the trial court erred in denying Appellant's motion in limine to prohibit the introduction of threats allegedly made by Appellant to Melissa Baker, Appellant's former girlfriend, when the victim was not Ms. Baker.

After a review of the record, we affirm the judgment of the trial court.

## I. FACTUAL BACKGROUND

The proof shows that on August 24, 1994, Appellant arrived at work at approximately 3:45 P.M. Appellant's shift commenced at 4:00 P.M., and Melissa Baker's, his former girlfriend, shift ended at 4:30.[1] According to the testimony of the victim, Ms. Debbie Quisenberry, Appellant arrived early in order to talk with Ms. Baker; however, Baker was reluctant to speak with him. Subsequently, Appellant allegedly began to cause a disturbance by pushing Baker and by threatening to kill her when she

---

[1] At the time of this offense, Appellant and Ms. Melissa Baker both worked at LeSportsac in Dandridge, Tennessee. Moreover, Ms. Debbie Quisenberry, the victim, also worked at LeSportsac and was a friend of Baker's.

left work. Because Baker feared Appellant, she requested that Ms. Quisenberry follow her home. Shortly after leaving work, Baker traveled down Nina Road, with Quisenberry following her. Quisenberry saw Appellant sitting in his car, alongside Nina Road, with his motor running. Immediately after Quisenberry's van passed Appellant, he pulled onto the road behind her. Appellant then accelerated and began nudging Quisenberry's bumper with his car. Quisenberry testified that the more that she sped up, the faster Appellant drove. Appellant continued to drive at a high rate of speed, pushing the victim's car with his bumper until she ran off the road. Quisenberry applied her brakes and crossed the opposite lane. The victim's van then flipped three times and ultimately came to rest in a field. She sustained two broken ribs and a badly bruised pelvis and back.

The prosecution presented the testimony of Officer Bud McCoig. Officer McCoig testified that Appellant's left front parking light was broken and that he recovered from along the roadside pieces of plastic from the housing of the parking light. Additionally, Officer McCoig stated that he successfully fit together the broken fragments with that portion of the housing which remained on Appellant's vehicle. The officer explained that while he could detect no damage to a good portion of the front of appellant's car, there was a scratch on the rubber pad of the left side of the vehicle's bumper.

On direct examination, Appellant testified that he followed Ms. Baker because he desired to stop her and to speak with her concerning their child. Appellant stated that as he attempted to pass Quisenberry, she abruptly pulled in front of him and into the opposite lane. Subsequently, he moved back into the righthand lane and saw Quisenberry's van turning over. Appellant denied that he had ever intentionally bumped Quisenberry's van with his vehicle and averred that he was not even sure that the two vehicles had ever made contact. On cross-examination, Appellant testified that he was not aware that Baker traveled on Nina Road in order to go to her home. Moreover, he stated that it was a coincidence that both he and Baker were on Nina Road at the same

time. Finally, Appellant denied ever threatening and shoving Ms. Baker at work prior to the incident.

## II. SUFFICIENCY OF THE EVIDENCE

Appellant's first contention on this direct appeal is that the evidence was insufficient to sustain his conviction for aggravated assault. We disagree.

This Court is obliged to review challenges to the sufficiency of the convicting evidence according to certain well-settled principles. A verdict of guilty by the jury, approved by the trial judge, accredits the testimony of the State's witnesses and resolves all conflicts in the testimony in favor of the State. State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). Although an accused is originally cloaked with a presumption of innocence, a jury verdict removes this presumption and replaces it with one of guilt. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with Appellant to demonstrate the insufficiency of the convicting evidence. Id. On appeal, "the [S]tate is entitled to the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." Id. (citing State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978)). Where the sufficiency of the evidence is contested on appeal, the relevant question for the reviewing court is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. Harris, 839 S.W.2d 54, 75; Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). In conducting our evaluation of the convicting evidence, this Court is precluded from reweighing or reconsidering the evidence. State v. Morgan, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, this Court may not substitute its own inferences "for those drawn by the trier of fact from circumstantial evidence." Matthews, 805 S.W.2d 776, 779. Finally, Tenn. R. App. P. 13(e) provides, "Findings of guilt in criminal actions whether by the trial court or jury shall be set aside

if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." See also Matthews, 805 S.W.2d 776, 780.

We stated in Matthews that "A criminal offense may be established exclusively by circumstantial evidence. However, before an accused may be convicted of a criminal offense based upon circumstantial evidence alone, the facts and circumstances `must be so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant.'" 805 S.W.2d 776, 779-80 (quoting State v. Crawford, 470 S.W.2d 610, 612 (Tenn. 1971)).

Tenn. Code Ann. § 39-13-101 provides in pertinent part: "A person commits assault who:

(1) Intentionally, knowingly or recklessly causes bodily injury to another;

(2) Intentionally or knowingly causes another to reasonably fear imminent bodily injury." Id. Tenn. Code Ann. § 39-13-102(a) provides that "A person commits aggravated assault who:

(1) Intentionally or knowingly commits an assault as defined in 39-13-101 and (A) Causes serious bodily injury to another; or (B) Uses or displays a deadly weapon. Id. "Serious bodily injury" is defined in Tenn. Code Ann. § 39-11-106(34) as "bodily injury which involves: (A) A substantial risk of death; (B) Extreme physical pain. . . ." Tenn. Code Ann. § 39-11-106(34). Thus, the State was required to prove each and every element of the offense beyond a reasonable doubt.

Appellant was originally charged with having committed this aggravated assault in two different ways, i.e., he caused serious bodily injury to Ms. Quisenberry, and he caused Ms. Quisenberry to reasonably fear death. Although the trial court found that these two offenses were merged, the proof shows not only serious bodily injury to Ms. Quisenberry but also that she was placed in reasonable fear of death.

Viewing the evidence in light of the above-stated criteria, we hold that a rational trier of fact could have concluded beyond a reasonable doubt that Appellant committed aggravated assault. First, the jury heard the compelling testimony of Debbie

Quisenberry, the victim. She testified that on August 24, 1994, she heard Appellant tell Baker that "he was going to kill her when she left work that day, he would be waiting on her when she got off work." Quisenberry further explained that after Appellant had threatened Baker's life, Baker asked Quisenberry to follow her home upon the completion of their shift. Upon leaving LeSportsac that afternoon at approximately 4:00 P.M., Quisenberry followed Baker as the two vehicles traveled along Nina Road toward White Pine. As she approached White Pine, Quisenberry noticed that Appellant "was sitting on the side of the road in his car with it started." She stated that she could discern that Appellant's car engine was running because she could see the exhaust emitting from its rear. Appellant pulled out behind Quisenberry and pushed her van with his car. As Quisenberry accelerated, Appellant simultaneously increased his speed and continued to push her van until she ran off the road and flipped her van. She told the jury that when Appellant bumped her car, "I thought I was going to die." As a result of the wreck, Quisenberry sustained two fractured ribs and a badly bruised pelvis and back.

It was the jury's prerogative to reject Appellant's version of events in favor of Ms. Quisenberry's. It apparently did so. That testimony shows that Appellant intentionally caused Ms. Quisenberry to wreck and that, as a result thereof, she was put at substantial risk of death and sustained serious bodily injury. Tenn. Code Ann. § 39-13-102(a). Thus the verdict is amply supported by the evidence.

### III. MOTION IN LIMINE

Appellant next argues that the trial court improperly denied his motion in limine to prohibit the introduction of threats allegedly made by Appellant to Melissa Baker. We do not agree.

In his pretrial motion in limine, Appellant sought to exclude testimony that Appellant allegedly had threatened to kill his former girlfriend, Melissa Baker. Appellant argues that because the threats were made to one other than the victim, they were irrelevant and should, therefore, be excluded. However, the trial court denied the motion in limine, explaining that these alleged threats were relevant and were admissible pursuant to TENN. R. EVID. 404(b), as they were probative on the issue of Appellant's intent and his motive to commit the offense.

The Tennessee Rules of Evidence embody, and our courts traditionally have acknowledged, a policy of liberality in the admission of evidence in both criminal and civil cases. State v. Robinson, 930 S.W.2d 78, 84 (Tenn. Crim. App. 1995); State v. Banks, 564 S.W.2d 947, 949 (Tenn. 1978). To be admissible, evidence must satisfy the threshold determination of relevancy mandated by Tenn. R. Evid. 401. Rule 401 defines "relevant evidence" as being "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TENN. R. EVID. 401. The decision of whether or not proffered evidence is relevant rests with the sound discretion of the trial court, and the trial court's decision will not be reversed on appeal absent a clear showing of an abuse of that discretion. State v. Forbes, 918 S.W.2d 431, 449 (Tenn. Crim. App. 1995). See State v. McCary, 922 S.W.2d 511, 515 (Tenn. 1996). In Forbes, this Court admonished trial courts to "state on the record the reasons for admitting or excluding evidence on relevancy grounds" in order to expedite appellate review. 918 S.W.2d 431, 449.

TENN. R. EVID. 404(b) controls the admissibility of specific instances of prior misconduct.  The rule delineates three specific conditions which must be satisfied before such evidence may be admitted:

> (1) The court upon request must hold a hearing outside the jury's presence;
> (2) The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence; and
> (3) The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

TENN. R. EVID. 404(b).

Evidence of the accused's prior conduct may be admitted to prove the accused's motive, intent, identity, absence of mistake, opportunity, or the existence of a common scheme or plan.  See NEIL P. COHEN, ET AL., TENNESSEE LAW OF EVIDENCE, § 404.6 2nd ed. (1990).

In light of the foregoing, we conclude that the trial court correctly denied Appellant's motion in limine.  First, the testimony regarding the alleged threats by Appellant to kill his former girlfriend was relevant to show that Appellant's encounter with Ms. Quisenberry was not coincidence or accidental as he alleged, but was, rather, an intentional act to either get Ms. Quisenberry out of the way so he could harm Ms. Baker or to frighten Ms. Baker.  These threats were highly relevant to show intent, motive, and absence of mistake.

Finding no merit in either of the two issues presented by Appellant on this direct appeal, we, therefore, affirm the judgment of the trial court.

_____
JERRY L. SMITH, JUDGE


CONCUR:

-8-

_____
JOSEPH M. TIPTON, JUDGE


_____
THOMAS T. WOODALL, JUDGE